# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **OPUS EAST, LLC.,** *et al,*.[1] | ) | Case No.: 09-12261-MFW |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Related D.I. 293 |

| | | |
|---|---|---|
| | ) | |
| In re: | ) | **Chapter 7** |
| | ) | |
| **100 M STREET, SE, LLC** | ) | Case No.: 09-12266-MFW |
| | ) | |
| Debtor. | ) | Related D.I. 50 |
| | ) | |
| | ) | Hearing: August 27, 2010 at 9:30 a.m. |
| | | Objection Deadline: August 25, 2010 at 11:00 a.m. |

**RESPONSE AND OBJECTION OF BANK OF AMERICA N.A., AS ADMINISTRATIVE AGENT, TO MAYFIELDGENTRY REALTY ADVISORS, L.L.C.'S OBJECTION TO TRUSTEE'S NOTICE OF INTENT TO ABANDON PROPERTY OF DEBTOR 100 M STREET SE L.L.C. PURSUANT TO 11 U.S.C. §§554(a) and 725 AND BANKRUPTCY RULE 6007(a) AND (II) MOTION TO VACATE THE ORDER APPROVING STIPULATION REGARDING CONSENTED TO MOTION OF BANK OF AMERICA N.A., AS ADMINISTRATIVE AGENT, FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE**

Bank of America, N.A., in its capacity as administrative agent for itself and certain other lenders ("Bank of America"), by and through its undersigned counsel, hereby files this Response and Objection to *MayfieldGentry Realty Advisors, L.L.C.'s* ("Mayfield") *(I) Objection to Trustee's Notice of Intent to Abandon Property of Debtor 100 M Street SE L.L.C. Pursuant to 11 U.S.C. §§554(a) and 725 and Bankruptcy Rule 6007(a) and (II) Motion to Vacate the Order Approving the Stipulation and Agreed Proposed Order Granting the Consented to Motion for*

---

[1] The Debtors in these proceedings are: Opus East, L.L.C., Mercer Corporate Center, Apple Valley II, L.L.C., APG I, L.L.C., APG II, L.L.C. and 100 M Street SE, L.L.C.

*Relief from Automatic Stay Under Section 362 of the Bankruptcy Code* (the "Motion") and in support thereof respectfully represents as follows:

## RESPONSE AND OBJECTION

*Bank of America's Response to Mayfield's Objection to the Trustee's Notice of Intent to Abandon*

1. Abandonment is within the trustee's sound business judgment. Courts defer to the trustee's judgment and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion. *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) (citing *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr.E.D.N.Y.1994)). As Mayfield notes in its Motion, a Trustee's decision to abandon an asset of the estate should be rejected when a party can show that property is beneficial to the estate. *See* Motion at ¶ 59, citing *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003)("The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be some benefit to the estate.")*(internal citations omitted)*.

2. Here, Mayfield has failed to show that its $55 million offer would provide any benefit to the estate because it simply cannot do so. Bank of America's secured claims against the estate totaled approximately $57,607,388.12 as of August 23, 2010. Mechanics and materialmen assert liens that purport to encumber 100 M Street[2] in the aggregate approximate amount of $2 million. Unpaid real estate taxes exceed $500,000. Mayfield also ignores the fact that Bank of America would be entitled to post-petition interest and reimbursement of costs, including attorneys' fees, on its claims were there to be any equity in excess of its first priority liens. Interest accrues at the rate of $4,639.62 per day. Finally, each month Bank of America has made protective advances in support of 100 M Street to keep current under the ground lease

---

[2] Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

and taxes, as well as otherwise supplement the rents to meet the monthly operating expenses of 100 M Street. Simple math demonstrates that Mayfield's offer of $55 million is insufficient to provide any benefit to the estate.

3. Mayfield was made aware of the extent of these claims as early as January 2010, when it resumed discussions with the Trustee and Bank of America regarding its purchase of the 100 M Street and the Note, respectively. Between January and July of 2010, Mayfield made at least three written offers to Bank of America, all of which were insufficient to allow Bank of America to fully recover on its claims or provide any equity to the estate. The insufficiency of Mayfield and others' offers presented to the Trustee, were indeed the basis for the Trustee entering into a stipulated Stay Relief Order with Bank of America and the Court's approval of such order. The Stay Relief Order specifically states, "the market value of the property is less than the aggregate amount owed to the Bank and other creditors asserting a lien on the Property, and as a result *there is no equity in the Property for the Debtor's bankruptcy estate.*" See Stay Relief Order at ¶ A (emphasis added). Mayfield had actual knowledge of the Stay Relief Order. *See* Exhibit "A" attached hereto and incorporated herein ("January Offer Letter").

4. Mayfield had the opportunity and did in fact submit offers to both the Trustee to purchase the 100 M Street leasehold interest and Bank of America to purchase the Note, all of which were rejected due to insufficiency of the proposed bid amount. Mayfield's current bid is similarly insufficient. Therefore, Mayfield has failed to show why this Court should disturb the Trustee's judgment to abandon the Property. *Slack*, 290 B.R. at 284 (With respect to the trustee's decision to abandon assets under §554, "the court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.")*(internal citations omitted)*.

5. Mayfield's motives are clear – to disrupt the orderly sale process being conducted by Bank of America and pending foreclosure. Bank of America is in the final stages of its sale process for the Note. Indeed, highest and final bids were solicited in the ordinary course of the process on August 24, 2010. Mayfield has submitted expressions of interest at each stage of the Note sale process and has been invited to submit its highest and best final bid to purchase the Note.

6. Bank of America is in the preliminary stage of foreclosure. If the Note sale does not yield an adequate recovery for Bank of America, it will then proceed to foreclose on 100 M Street. Any Note purchaser would benefit from continuing the foreclosure process to foreclose out junior interests in 100 M Street. Indeed, such a foreclosure is the only process that will yield title free and clear of the nearly $2 million of asserted mechanics' liens.

7. Mayfield could not have any intent to purchase 100 M Street through a 363 sale process, which would require that Mayfield pay much more to clear all liens and provide excess funds for administrative, priority and unsecured creditors. Indeed, the Trustee would be entitled to seek a commission of approximately $2 million through such a process bringing the total consideration needed to clear all liens to in excess of $62 million, more than 10% more than Mayfield's purported offer of $55 million.

8. Rather, Mayfield's motives must be to encumber the Note sale process and pending foreclosure sale to the detriment of Bank of America and all other parties in an attempt to remain the only party interested for its own benefit in order to leverage Bank of America to cause it to sell the Note or 100 M Street following foreclosure for less. Mayfield's Motion is nothing more than a bald attempt to gain leverage over the Trustee and Bank of America in its

unending effort to manipulate the sale process to purchase the Project or the Note at the cheapest possible price.

9. There is also little substance to Mayfield's contentions with respect to the $5 million Escrowed Funds. First, but for Bank of America's set off against a bank account owned by Debtor 100 M Street, Bank of America would be owed an additional $5 million plus additional accrued interest, diminishing the estate's interest even further and rendering Mayfield's current bid even further insufficient. Second, this Court does not have jurisdiction to hear the two party, non-debtor dispute between Mayfield and Bank of America related to the set off of the $5 million Escrowed Funds because, among other things, as of the Petition Date, the estate held no interest in the deposit. *See In re Frascella Enterprises, Inc.* 349 B.R. 421, 433 (Bankr. E.D.Pa.,2006) ("[U]nless a dispute between non-debtors by itself creates the logical possibility that the debtor's estate will be affected, there is no "related to" jurisdiction"). This "dispute" is a red herring and yet another attempt by Mayfield to muddy the sale process for its benefit.

10. In summary, the liens encumbering 100 M Street approximate $60 million as of August 23, 2010, which amount will increase materially through a closing date proposed by Mayfield to be within 30 days following the entry of a 363 sale order, and an additional $2 million or so to cover administrative and priority claims, requiring a purchase price in excess of $62 million to yield any recovery for unsecured creditors. The Trustee has not received any offer to purchase 100 M Street for an amount that would yield any benefit to the estate to pay its administrative expenses, let alone yield a recovery for unsecured creditors. The Trustee does not dispute the extent of Bank of America's asserted claim or that its liens are perfected. Accordingly, the Trustee properly, reasonably and in good faith exercised his business judgment

in determining that 100 M Street is of no value to the estate and is burdensome to the estate. Mayfield has alleged no fact that calls the Trustee's exercise of his business judgment into question.

***Bank of America's Objection to Mayfield's Motion to Vacate the Stay Relief Order***

11. Despite the fact that Mayfield may not have been served with Second Stay Relief Motion, Mayfield had actual knowledge of the stay relief proceedings and the Stay Relief Order, at least as early as January 2010, as evidenced by the letter sent from its counsel to Bank of America's counsel, dated January 19, 2010, in which it acknowledges entry of the Second Stay Relief Order. *See* January Offer Letter at ¶1 ("...[It seems that you have received on behalf of Bank of America a final order lifting the stay and authorizing Bank of America to pursue any of its non-bankruptcy remedies, including foreclosure, relating to the 100 M Street SE property").

12. Mayfield has been keenly aware of all matters in this case, as evidenced by its months of discussions with Trustee's respecting its desire to purchase 100 M Street and Bank of America's counsel, direct discussion with Bank of America and its written offers sent to Bank of America, both pre and post-petition, respecting its desire to purchase the Note.

13. Mayfield fails to allege any fact or circumstance sufficient under Rule 60 to open the judgment of the Stay Relief Order. A motion for relief from a judgment pursuant to Rule 60(b) provides an "escape valve to prevent injustice," but should only be granted if the movant provides "a powerful showing that a substantial risk of an injustice is present." *Glinert v. Wickes Cos.*, 1992 WL 165153, at *3 (Del. Ch. July 14, 1992), *aff'd*, 620 A.2d 857 (Del. 1993); *see also Coltec. Indus. v. Hobgood*, 280 F.3d 262, 273 (3d Cir.2002)(relief under Rule 60(b) is "extraordinary relief and may only be invoked upon a showing of exceptional circumstances); *Boughner v. Sec. of Health, Ed. & Welfare*, 572 F.2d 976, 978 (3d Cir.1978)(finding that a party

seeking relief under [Rule 60(b)] has the burden of showing that without such relief, an extreme and unexpected hardship would result). This heavy burden protects the finality of judgments and judicial economy. *Glinert*, at *Id.* (denying motion because the new evidence "would have had no material effect upon the reasoning and conclusions" of the court); *see also Credit Lyonnais Bank Nederland v. Pathe Comms. Corp.*, 1996 WL 757274, at *3 (Del. Ch. Dec. 20, 1996) (denying the "*apparent 'gaming' motivation of the motion*" to reopen judgment based on a very late attempt to refocus the case). Because such a motion potentially affects the finality of a judgment, the movant must act without unreasonable delay when it discovers the new, material evidence. *In re U.S. Robotics Corp. S'holder Litig.*, 1999 WL 160154, at *8 (Del. Ch. Mar. 15, 1999) (citing *Schremp v. Marvel*, 405 A.2d 119, 120 (Del. 1979)). Mayfield's Motion fails to allege the discovery of any new fact, any change in the law or any other grounds sufficient for a showing under Rule 60(b). Mayfield's Motion must be denied.

14. "Whether a court grants a party's request to admit new evidence [on a Rule 60(b) motion] 'is not . . . of right, but rests in the sound, reasonable and legal discretion of the court.'" *Quereguan v. New Castle County*, 2010 WL 2573856, at *7 ((Del. Ch. June 18, 2010) (quoting *Missouri-Kansas Pipe Line Co.*, 2 A.2d 273, 277-78 (Del. 1938)); *see also In re Davis*, 150 B.R. 633, 638 (Bankr. W.D. Pa. 1993). Mayfield does not even attempt to allege a reasonable factual basis for its delay in seeking to vacate the Stay Relief Order or a sufficient basis under Rule 60 to vacate the Stay Relief Order.

15. Mayfield sat on its rights with no explanation, despite having the knowledge and opportunity to exercise them. Nothing consistent with Mayfield's actions has demonstrated that it was "justifiably ignorant" of any of the relevant facts and circumstances of this case. Incredibly, Mayfield asserts that its bid is the "newly discovered evidence" that serves as

grounds for vacatur of the Stay Relief Order. *See* Motion at ¶ 66. However, the amount of Mayfield's bid is not newly discovered evidence; in fact, it is not evidence at all and belies logic and common sense that Mayfield would prefer to pay more to acquire an asset than is required through the Note sale process that is ongoing and in which Mayfield indeed is participating. Mayfield has always been free to bid whatever amount it wished to bid. The fact that its previous bids were rejected does not give it grounds to get another bite at the apple, or so late in the day ask this Court to enjoin Bank of America's Note sale process or foreclosure.

16. Mayfield has been trying to acquire 100 M Street for a long time. It submitted several offers pre-petition, each in a declining amount. Is submitted several offers post-petition to the Trustee to purchase 100 M Street and to Bank of America to purchase the Note, again in declining amounts. Mayfield's rights and interests can hardly be seen as being prejudiced, as Mayfield could at any time have offered to pay a sufficient amount to pay Bank of America's claim in full. Bank of America, on the other hand, has been subject to the stay upon the commencement of this case, has incurred fees and costs due to the bankruptcy cases, has made substantial protective advances to avoid default and termination of the ground lease, has paid taxes accruing against 100 M Street and has supplemented the rents in order to cover the monthly operating expenses of 100 M Street, all to Bank of America's extreme prejudice. Any further delay will only prejudice Bank of America further with no corresponding prejudice to any other party. There is no balance of the equities, as Bank of America is the only party burdened.

17. It is difficult to imagine how Mayfield suffered or will suffer any prejudice by not getting service of the Second Relief Stay Motion, as its bid would have been rejected for insufficiency in any event. Furthermore, Mayfield is currently participating in the Note sale process, and if unsuccessful, it may participate at the foreclosure sale.

18. Furthermore, in order to reinstate the stay, the Court should consider the elements of Bankruptcy Code §362(d). Under sub-section (1) the estate cannot adequately protect Bank of America's interests in 100 M Street because, among other things, the estate has insufficient unencumbered liquid assets to pay taxes accruing; under sub-section (2) the estate lacks equity and 100 M Street is not necessary to an effective reorganization of this Chapter 7 estate; and under sub-section (3) the Debtor is a single asset real estate debtor, has not proposed a plan and has paid no interest to Bank of America. The stay should not be reinstated where relief from stay is proper under all of the elements and tests requiring the Court to terminate the stay.

19. Accordingly, one can conclude that Mayfield actually has no interest in vacating the Relief Stay Order or reinstating the stay for any proper purpose. To the contrary, Mayfield can only be using this Motion as a improper tactic to delay or worse yet, interfere with, the Note sale and/or pending foreclosure to its benefit.

WHEREFORE, Bank of America respectfully requests that this Court (i) overrule Mayfield's (I) Objection to Trustee's Notice of Intent to Abandon Property of Debtor 100 M Street SE L.L.C. Pursuant to 11 U.S.C. §§554(a) and 725 and Bankruptcy Rule 6007(a), (ii) deny with prejudice its Motion to Vacate the Order Approving the Stipulation and Agreed Proposed Order Granting the Consented to Motion for Relief from Automatic Stay Under Section 362 of the Bankruptcy Code, for the reasons set forth above, and (iii) grant such other and further relief the Court deems fair and proper.

Respectfully submitted, this 25th day of August, 2010.

**EDWARDS ANGELL PALMER & DODGE LLP**

By: /s/ Stuart M. Brown
Stuart M. Brown (No. 4050)
Cynthia M. Baldwin (No. 5041)
919 North Market Street, 15th Floor

Wilmington, Delaware 19801
Telephone: (302) 777-7770
Facsimile: (302) 777-7263
E-Mail: sbrown@eapdlaw.com
cbaldwin@eapdlaw.com

and

Louis J. Ebert (No. 4625)
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201
Email: lebert@rosenbergmartin.com
Telephone: 410-649-4995
Facsimile: 410-727-1115

*Counsel for Bank of America Bank, N. A.*